During the year 1928, C. Roy Griffin operated a farm in Edgecombe County and purchased certain fertilizer from the plaintiff corporation through its agent, W. L. Reason. He was unable to pay for same. C. Roy Griffin testified that in the latter part of 1928, or in the early part of 1929, he had a conversation with the agent, Reason, with respect to furnishing fertilizer for the year 1929. In this conversation Reason agreed to furnish fertilizer for the year 1929 on open account, upon condition that C. Griffin, the father of C. Roy Griffin, would endorse a note for the amounts due for fertilizer furnished in 1928. Subsequently Reason approached C. Roy Griffin for further conversation about the matter. C. Roy Griffin said: "I sent down there and Mr. Vinton Fountain was in the office and talked it over, the terms on which he would ship it, that my father endorse the note for $2,600. . . . I asked Mr. Reason to get me something in writing to show they would do that, the American Agricultural Chemical Company would. Mr. Fountain said: `I am their attorney. I will write it for you.' I said, `No, I prefer it from the company.' He said, `All right, that he would get it in a few days.' Mr. Reason called me and told me he had a letter from the company. I went down there again. Mr. Reason gave me the letter and gave me the writing showing that he would furnish it with the company, gave me the letter to my father to take to him with the note showing he would furnish it. . . . I took the note and carried it to my father with that letter and read the letter to him. He didn't have his glasses, and he signed the note. I took it back to Mr. Reason and waited until sometime in March and gave him order for fertilizer. Up to the time of this transaction father had not assumed any liability for my indebtedness to the Chemical Company. . . . After the note was signed and delivered to Mr. Reason I went back and gave order for it and he sent it in to the Chemical Company people and they wrote him back that they would not ship the fertilizer unless they had a mortgage on my team and a crop lien. They never sold me any fertilizer in 1929. They refused to sell me fertilizer." The letter from the plaintiff, addressed to the agent, Reason, is as follows: "Dear Mr. Reason: Our attorney, Mr. V. E. Fountain, at Tarboro, has just informed us that Mr. Roy Griffin at Pinetops wants you to furnish him his fertilizers for the year 1929. This is to advise that we will be glad to make shipment to Mr. Griffin as per your orders. Yours very truly, The American Agricultural Chemical Company, Norfolk Sales Dept., By: W. L. Nichols."
The defendant, C. Griffin, testified in substance to the same facts as *Page 561 
his son, C. Roy Griffin, and said: that Reason had approached him "and told me Roy (C. Roy Griffin) had failed to pay for his fertilizer, and told me if I would go on his note for the past year (1928) he would furnish him fertilizer for 1929 on open account as he did the year before. . . . After that I was down there one day at Webb's store and Roy and I were there in front of Reason's store, and Roy had a note and letter. I looked at the letter, but did not read it. I signed the note with the expectation of getting him his fertilizer for the coming year as he did the year before. . . . I signed it on account of what Mr. Reason told me. I had no other reason for signing it. I did not get one cent out of signing this note." The note was offered in evidence and was a plain promissory note for $2,600, dated 1 January, 1929, payable to the "American Agricultural Chemical Company or order on or before December, 1929." On the back of the note was a notation signed by the defendant, C. Griffin, as follows: "For value received, the undersigned . . . hereby guarantees the payment of the within note at maturity," etc. The agent, W. L. Reason, in a contract between him and the plaintiff, had guaranteed "payment when due of all accounts and notes representing proceeds of sales of all fertilizers consigned to you hereunder. All notes shall be made by the purchasers on blanks furnished by us, payable to our order at some bank or express office."
The evidence tended to show that Reason died 9 December, 1930, and this action was instituted on 21 July, 1930.
The following issues were submitted to the jury:
1. "Did the defendant endorse and guarantee the payment of the note to plaintiff as alleged in the complaint?"
2. "Did the plaintiff contract and agree as a consideration for the endorsement of said note by the defendant, Charlie Griffin, to sell fertilizer to C. Griffin for 1929, on open account as alleged by the defendant?"
3. "If so, did the plaintiff fail and refuse to furnish C. Roy Griffin fertilizer on open account as alleged by defendant?"
The jury answered all the issues "Yes." The record recites: "All the issues set out in the record were submitted to the jury, and the court fully and properly instructed the jury thereupon." There was a verdict in favor of defendant and motion for judgment on the verdict. The plaintiff made a motion to set aside the verdict upon two grounds: First, that C. Roy Griffin, had been permitted to testify concerning a personal transaction with W. L. Reason, who was dead at the time of the trial. Second, that the court permitted the defendant, C. Griffin, to testify as to the conversation with W. L. Reason, deceased. The court, being of the opinion that the testimony of defendant, C. Griffin, was incompetent by virtue of C. S., 1795, set the verdict aside as a matter of law, and *Page 562 
the defendant appealed. It appeared that at a former term of the Superior Court judgment had been entered against C. Roy Griffin, and also, that the personal representatives of W. L. Reason were not parties to the suit.
Notice of appeal was given by the plaintiff from the ruling of the trial judge that the testimony of C. Roy Griffin was competent. The appeal, however, on this phase of the case was not perfected, and no point is made in the brief with respect thereto. Hence this aspect is eliminated. Consequently the sole question relates to the competency of the conversation between C. Griffin and the plaintiff's agent, Reason, by virtue of the application of C. S., 1795. Many years ago the stream of interpretation of C. S., 1795, forked. One branch was made up of cases coming within the letter of C. S., 1795, or the express words of the statute. The other branch was made up of cases coming within the spirit of said statute. The case at bar lies in the latter branch and is represented by such decisions as Bryant v. Morris, 69 N.C. 444; McGowan v. Davenport,134 N.C. 526, 47 S.E. 27, and Honeycutt v. Burleson, 198 N.C. 37,150 S.E. 634. These cases proceed upon the theory that C. S., 1795, not only applies to parties but to any person having a pecuniary interest in the result of the action.
Did Reason have such a pecuniary interest so far as the defendant, C. Griffin, is concerned as to render the evidence incompetent? Both were guarantors of the payment of the note of C. Roy Griffin. The sole consideration for the guaranty of C. Griffin was the furnishing of fertilizer to his son on open account, for the year 1929. The jury found that the plaintiff breached the contract, and hence there was a total failure of consideration for the guaranty of Griffin. Consequently he was released. Chemical Co. v. Griffin, 202 N.C. 812, 164 S.E. 577; TrustCo. v. Clifton, 203 N.C. 483.
If C. Griffin had lost and been compelled to pay the note, obviously there was no claim he could assert against Reason or his estate after his death. As C. Griffin wins and is thereby released, can the plaintiff maintain a suit against Reason or his estate by virtue thereof? Manifestly, the release of C. Griffin was the result of the wrongful act of the plaintiff, and the law does not permit a creditor to profit by his own wrong or to breach a contract and thereby release one guarantor and at the same time hold another.
Therefore, the court is of the opinion that the evidence was competent, and that judgment should be entered upon the verdict.
Reversed. *Page 563